SCHNEIDER-DAVIS CO. v. L. H. HART ET AL.

Decided May 31, 1900.

**1. Guaranty Held Continuing—"Line of Credit."**

W. gave to appellant company a written guaranty of the account of H. with them "for a line of credit to the amount of $500," and when that limit was reached the company took H.'s note therefor with W. as surety, and also sold H. another bill of goods on account to the amount of $100. Held, that as "line of credit" is shown to have a fixed meaning in the mercantile world, meaning a margin of credit enabling one to continue buying so long as he keeps his account within the limit by payments, W. was liable also for the $100 due for the last bill of goods.

**2. Evidence—Parol Varying Written Contract.**

Parol evidence by W. that it was understood between him and the company that the guaranty was not to be continuing, was not admissible to vary the written instrument.

APPEAL from the County Court of Ellis. Tried below before Hon. J. E. LANCASTER.

*W. L. Hall* and *Lancaster, Beall & Gammon,* for appellant.

*Groce & Skinner,* for appellees.

GARRETT, CHIEF JUSTICE.—This suit was brought by the appellant to recover for merchandise sold to the appellee L. H. Hart, upon the guaranty of the appellee M. A. Wright. A trial by jury in the court below resulted in a judgment in favor of the appellant against Hart for the sum of $298.70, the balance upon his account, and in favor of Wright upon the guaranty. The account of Hart with the appellant was opened upon the guaranty which was required by the appellant, and is as follows:

"DALLAS, TEXAS, April 20, 1897.

"I hereby guarantee the account of L. H. Hart, doing business at Henry, Texas, for a line of credit which Schneider-Davis Company, to the amount of $500, and obligate myself to pay Schneider-Davis Company for any goods bought by L. H. Hart to the amount of $500, in case he should not do so.

"It is understood and agreed that the amount of goods bought by L. H. Hart during the summer shall be closed in notes at such times as Schneider-Davis Company may desire. The notes to be payable during the month of October, and if such notes are taken I hereby obligate myself to sign them jointly with L. H. Hart.

"M. A. WRIGHT."

In August following the appellant notified Wright that Hart had reached the limit, when a note was executed by Wright for the amount then due, $495.30, no payment at all having been made upon the ac-

count. An additional $100 worth of merchandise was then sold to Hart upon the verbal agreement of Wright that the credit might be extended for that amount. Hart afterwards made payments on both note and account, and purchased other goods, and finally failed in business and made an assignment on December 14, 1897. At the time of his failure he had fully paid up the note, and owed on account the balance for which judgment was obtained. Wright claims that his guaranty was exhausted as soon as the limit was reached, and that he is not liable for the balance sued for, while the appellant contends that the guaranty was a continuous one for any balance that might be due at any time, not to exceed $500. Wright pleaded in defense, and the court below allowed him to testify, that it was understood between him and the appellant that the guaranty was not continuous, but was simply for the payment for goods bought not exceeding $500 in amount. This defense was clearly inadmissible. The effect of it was to vary the terms of the written contract. The construction of the writing was for the court, aided by evidence to explain the meaning of the words "line of credit." From the uncontroverted evidence, "line of credit," in the sense in which it is used in the writing, has a fixed and definite meaning in the mercantile world, and means a margin of credit enabling one to continue buying so long as he keeps his account within the limit by payments. If the words "line of credit" in the writing needed any explanation, the meaning was made clear by the evidence, and giving proper construction to the guaranty thus explained, the judgment of the court below was wrong. A verdict for the appellant should have been given at the direction of the court. The judgment will be reversed and judgment will be rendered by this court in favor of the appellant for the amount of the judgment rendered against Hart by the court below.

*Reversed and rendered.*